**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re: Case No. 3:13-bk-1820-JAF

JAMES GERBEN, JR. Chapter 13

Debtor.
_______________________/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This case came before the Court upon Motion for Violation of Automatic Stay and Creditor Misconduct and Emergency Motion to Inform the Queen Anne County Circuit Court of Maryland to Obey the Federal Bankruptcy Stay Injunction (the "Motion for Sanctions for Violation of the Automatic Stay"). Debtor seeks sanctions against Terry Brumwell, Elizabeth O'Shea, Alice Hall, Brook Schumm III, and Daneker, McIntire, Schumm, Prince, Manning & Widman, P.C. (collectively, the "Respondents"). The Court conducted a hearing on the matter on April 7, 2014. In lieu of oral argument, the Court elected to take the matter under advisement. The Court makes the following Findings of Fact and Conclusions of Law.

**Findings of Fact**

During September, 2004, a wrongful death action was filed against Shirley Hirshauer and Cache House Assisted Living in the Circuit Court for Anne Arundel County, Maryland (the "Anne Arundel Court") by Wanda Clemons, individually and as personal representative of the Estate of Geraldine Gray, Terry Brumwell, Alice Hall, Elizabeth O'Shea, Patricia Plews, Christine Laumann, Michael Gray and Wayne Gray (the "Clemons Parties"). On November 5, 2004, Mrs. Hirshauer transferred to her three sons, James A. Gerben, Jr. ("Debtor"), Randy W. Gerben, and Jason W. Gerben

(collectively, the "Gerbens"), 47 acres of real property located on Busic Church Road in Queen Anne's County (the "Property") for no consideration. On November 9, 2004, the complaint was served on Mrs. Hirshauer and Cache House Assisted Living. On December 3, 2004, the deed for the Property was recorded.

On July 14, 2006, the Anne Arundel Court ordered judgment in favor of the Clemons Parties, awarding Ms. Clemons, as the representative of Ms. Gray's estate, $400,000.00 and awarding $100,000.00 in favor of each of Ms. Gray's eight children for a total of $1,200,000.00. On July 18, 2006, the Clemons Parties filed a complaint to avoid the transfer of the Property (the "Fraudulent Transfer Action") in the Queen Anne's County Circuit Court (the "Queen Anne's Court"). On August 7, 9, and 14, 2006, Ms. Hall, Ms. O'Shea, and Ms. Brumwell, respectively, recorded their judgments in the Queen Anne's Court. (Respondents' Comp. Ex. 1). On August 7, 10, and 24, 2006, Ms. Brumwell, Ms. Hall, and Ms. O'Shea, respectively, filed Requests for Writ of Execution on Real Property-Levy in the Queen Anne's Court by which they sought an immediate writ of execution and levy of the Property by the Sheriff in order to satisfy their judgments against Mrs. Hirshauer. (Respondents' Comp. Ex. 2). On August 15, 2006, in response to Ms. Brumwell's request, the Queen Anne's Court issued a Writ and Order Upon Request for Writ of Execution on Real Property Levy directing the Sheriff to levy upon the Property by "entering a description of the [P]roperty upon a schedule and by posting a copy of the writ and the schedule in a prominent place on [the Property]." (Id.) On August 15, 2006, the Queen Anne's Court issued a similar order in response to Ms. Hall's request. (Id.) The Orders provided that any party contesting the levies had thirty days to file a motion to that effect. (Id.) The dockets reflect a Sheriff's certificate of

posting on the Property on August 18, 2006 as to the levies of Ms. Hall and Ms. Brumwell. (Respondents' Composite Ex. 1). Ms. O'Shea's levy was executed on January 12, 2007. (Id.)

On September 13, 2006, the Gerbens filed Motions to Release Real Property in Response to the Writs. (Respondents' Comp. Ex. 1). On September 28, 2006, the Queen Anne's Court issue a Memorandum and Order Regarding Stay of Execution with respect to the writs of execution and levy proceedings initiated by Ms. Hall, Ms. O'Shea, and Ms. Brumwell (the "Stay Order"). The Stay Order provided that "it would appear that the writs of execution, real property, and orders issued therewith should be rescinded, released and vacated, without prejudice until such time as the [Fraudulent Transfer Action] is adjudicated … Until such time as the matter can be heard and proper assurances regarding transfer of the [P]roperty can be made, the Court will stay enforcement of the subject writs of execution and orders … The enforcement of writs of execution issued, and any Orders issued therewith … are hereby STAYED pending further order of this Court." (Debtor's Ex. 44). On December 20, 2006, the Queen Anne's Court conducted a hearing on the Motion to Release Real Property in Response to the Writs. (Respondents' Comp. Ex. 1). The docket entry provides "[c]ounsel appeared and heard Motion to Release property Court to leave stay in place, deny motion to release property, no writs until after trial." (Id.) The docket entry also reflects that a trial in the Fraudulent Transfer Action was scheduled for March 16, 2007. (Id.) On January 22, 2007, the Queen Anne's Court entered Order Denying Motion for Release of Property from Levy. (Id.)

On March 16, 2007, the trial was held in the Fraudulent Transfer Action. (Respondents' Comp. Ex. 1). On June 19, 2007, the Clemons Parties filed an involuntary Chapter 7 bankruptcy petition against Mrs. Hirshauer in this Court. On July 27, 2007, the Queen Anne's Court entered a Memorandum Opinion and Judgment in the Fraudulent Transfer Action (the "Fraudulent Transfer Judgment") finding that Mrs. Hirshauer transferred the Property to the Gerbens with the intent to defraud, delay, and hinder the Clemons Parties and avoided such transfer as fraudulent. On August 6, 2007, the Queen Anne's Court received a letter from Mrs. Hirshauer and the Gerbens informing it of Mrs. Hirshauer's bankruptcy filing and requesting that it strike the Fraudulent Transfer Judgment nunc pro tunc, which it declined to do. (Respondents' Ex. 4). However, on September 20, 2007, the Queen Anne's Court stayed the proceedings as to Mrs. Hirshauer. (Debtor's Ex. 5).

On November 8, 2007, this Court entered an order for relief in Mrs. Hirshauer's Chapter 7 case. In July of 2008, the trustee of Mrs. Hirshauer's bankruptcy estate commenced an adversary proceeding in this Court seeking a judgment determining that: 1) the Fraudulent Transfer Judgment was not obtained in violation of the automatic stay and therefore was not void; (ii) alternatively, even if the Fraudulent Transfer Judgment was obtained in violation of the automatic stay, it was not void as to the Gerbens; and iii) the Property was property of the bankruptcy estate to be administered by the Trustee. On September 3, 2009, the Court entered Findings of Fact and Conclusions of Law in which it found that the Fraudulent Transfer Judgment violated the automatic stay, was void as to Mrs. Hirshauer and the Gerbens, and was not valid and binding. (Debtor's Ex. 33). The Court also found that the transfer of the Property was neither actually

nor constructively fraudulent. (Id.) The Court denied all relief to the trustee. (Id.) The Court made no findings or determinations as to the validity or effect of the levies.

On September 15, 2009, the Queen Anne's Court received a letter from Mrs. Hirshauer along with a copy of this Court's Findings of Fact and Conclusions of Law and Judgment, requesting that it close the Clemons Parties, O'Shea, Hall, and Brumwell cases against her. (Respondents' Ex. 4). On November 19, 2009, the Queen Anne's Court received a similar letter from Mrs. Hirshauer. (Id.) The Queen Anne's Court noted on both letters that it would take no action and also noted on the second letter that the cases remained active but stayed by bankruptcy. (Id.)

By Order dated March 28, 2011, the United States District Court affirmed this Court's September 3, 2009 Findings of Fact and Conclusions of Law. In its Order affirming this Court, the District Court noted that "[the Fraudulent Transfer Judgment] remains viable as to the Gerbens only if [Mrs.] Hirshauer, as grantor of the Property, was not a necessary party to the [Fraudulent Transfer Action]." The District Court made no findings or determinations as to the validity or effect of the levies.

On July 6, 2011, this Court entered a discharge in Mrs. Hirshauer's case. On July 22, 2011, Mrs. Hirshauer filed a motion in the Queen Anne's Court seeking damages against the Clemons Parties and their attorneys for the expenses she incurred in defending lawsuits regarding the Property, which the court denied by Order dated August 3, 2011. (Respondents' Ex. 4). The Queen Anne's Court stated therein:

> The judgments which were entered by the [Anne Arundel Court] ... are and were entitled to full faith and credit under the U.S. Constitution, art. iv, sec. 1. Under section 524 of the Bankruptcy Code, the Debtor may discharge *personal liability* on those judgments, but the underlying existence of those judgments may not be disputed. No

> judgment in any amount was "entered for [Mrs. Hirshauer]."

(Id.) The Queen Anne's Court also noted that "no relief was entered by" this Court in favor of Mrs. Hirshauer "with respect to the liens established in the [Queen Anne's Court] by writs of levy entered in August, 2006 and December, 2006, more than 90 days prior" to the filing of Mrs. Hirshauer's bankruptcy case. (Id.) Quoting § 524(e) of the Bankruptcy Code, the Queen Anne's Court stated "the discharge of a debt of the debtor does not affect the liability of any other entity on, or the property, of any other entity for, such debt." (Id.) Finally, the Queen Anne's Court ordered: "[t]he liens established in [Queen Anne's] County pursuant to the Sheriff's levies on the [Property], which is not owned by [Mrs.] Hirshauer, which levies were pursuant to three of the judgments entered in Anne Arundel County, Maryland in favor of Clemons Plaintiffs O'Shea, Hall and Brumwell, shall remain in effect." (Id.)

On October 20, 2011, Ms. O'Shea, Ms. Hall, and Ms. Brumwell filed a Motion to Enlarge Time to Sell Property or in the Alternative, Request for Instruction to Sheriff to Schedule Sale to which Mrs. Hirshauer and the Gerbens filed an opposition. (Id.) On November 14, 2011, Mrs. Hirshauer and the Gerbens filed a Motion to Vacate [the Fraudulent Transfer Judgment] as well as a Motion to Dismiss or in the Alternative Enter Summary Judgment in their favor. (Id.) On December 20, 2011, the Queen Anne's Court conducted a hearing on the Motion to Enlarge and the Motion to Vacate. On December 26, 2011, the Queen Anne's Court entered an order granting the Motion to Enlarge and denying the Motion to Vacate (the "December, 2011 Order"). (Id.) The December, 2011 Order again stated that Mrs. Hirshauer's discharge "neither discharges her *in rem* liability nor, in any way, affects the personal

or *in rem* liability of third parties." (Id.) The Queen Anne's Court also found that the judgment liens remained effective and that the bankruptcy proceedings had no res judicata effect with respect to the liens. (Id.) Finally, the Queen Anne's Court stated "it is unnecessary to vacate the [Fraudulent Transfer Judgment] in order to rule on these motions. The [Fraudulent Transfer Judgment] was determined by [this Court] to have been void as violating the automatic stay. The judgment liens, however, were merely stayed, first by order of this court, and then by the bankruptcy proceedings." (Id.) In a separate order entered the same day, the Queen Anne's Court ordered that Ms. O'Shea, Ms. Hall, and Ms. Brumwell would have until March 31, 2012 to schedule a sale of the Property. (Id.)

On January 9, 2012, the Gerbens and Mrs. Hirshauer filed a Motion to Reconsider the December, 2011 Order to which the Clemons Parties filed an opposition. (Id.) On January 31, 2012, the Queen Anne's Court denied the Motion to Reconsider the December, 2011 Order. (Id.) On February 21, 2012, Mrs. Hirshauer and the Gerbens appealed the December, 2011 Order to the Court of Special Appeals of Maryland (the "Court of Appeals"). (Id.) Because the appeal was timely filed only with respect to the January 31, 2012 order denying the Motion to Reconsider, the appeal was dismissed "as to all orders, opinions, and matters ... except for the Order Denying Motion for Reconsider" entered on January 31, 2012. (Id.)

On March 27, 2013, Debtor filed this Chapter 13 bankruptcy petition. On April 9, 2013, in a 28 page opinion, the Court of Appeals affirmed the Queen Anne's Court's order denying the Motion for Reconsideration. (Id.) The Court of Appeals noted "[a]s the [Queen Anne's Court] found it its order granting Ms. O'Shea, Ms. Hall, and Ms.

Brumwell's Motion to Sell the Property, '[t]he judgment liens ... were merely stayed, first, by order of [the Queen Anne's Court], and then by the bankruptcy proceedings.' The [Queen Anne's Court] further explained that 'the discharge of [Ms.] Hirshauer in bankruptcy neither discharges her in rem liability nor, in any way, affects the personal or in rem liability of third parties,' and that 'the judgment liens remain effective, and that the bankruptcy proceedings have no res judicata effect with respect to the liens.'" (Id.)

On May 20, 2013, as a result of a suggestion of bankruptcy filed by Debtor, the Queen Anne's Court entered an Order Staying Proceedings in the case of Ms. Brumwell vs. Mrs. Hishauer. (Respondents' Ex. 5). On June 19, 2013, Ms. O'Shea, Ms. Hall, and Ms. Brumwell filed a Motion to Modify Stay Order Entered May 20, 2013 as to Randy W. Gerben and Jason W. Gerben. (Respondents' Ex. 6). The Motion indicated:

> The record state of title of the [P]roperty is that fee simple title vested in [the Gerbens] as of December 3, 2004. Next in time in the court records of the County are the judgment levies of Brumwell and Hall executed by the Sheriff in August, 2006. Next in time is the judgment levy of O'Shea on or about December 28, 2006 in the court record. Under Maryland law, the execution upon property held as joint tenants severs the joint tenancy into tenancies in common. If there is a severance of the joint tenancy by way of an execution upon the judgment of one of the joint tenants, the judgment then becomes a lien upon the interest of the judgment debtor in the tenancy in common which then arises. Eastern Shore Bldg. & Loan Corp. v. Somerset, 253 A.2d 367, 253 Md. 526, 531 (1969).

(Id.) On July 3, 2013, Mrs. Hirshauer and the Gerbens filed an opposition indicating, among other things, that "[t]he Gerben Defendants own the [Property] as Joint Tenants. *Defendants would proffer that certainly a joint tenancy can be severed resulting in a* tenancy in common-but such severance has not as of yet occurred and as such [Debtor]'s stay extends to the entirety of the [Property]." (Respondents' Ex. 7). On July 10, 2013,

Ms. O'Shea, Ms. Hall, and Ms. Brumwell filed a reply to the opposition stating, among other things, that "[t]here is no legal support for the allegation that the [P]roperty is owned as joint tenants; the Maryland law cited in the Motion is clear that the joint tenancy was executed by the Sheriff's execution." (Respondents' Ex. 8). On July 10, 2013, the Queen Anne's Court entered Order Modifying Stay Order of May 20, 2013 as to Randy W. Gerben and Jason W. Gerben noting "there being no stay applicable to co-debtors under Maryland law based on any automatic stay in [Debtor]'s case and having reviewed the opposition of Defendants" and ordering that "[t]his Court's order of May 20, 2013 staying proceedings ... with respect to enforcement of [Ms. O'Shea, Ms. Hall, and Ms. Brumwell]'s liens and rights is vacated as to all persons, including Randy W. Gerben and Jason W. Gerben, except James A. Gerben, Jr." (Respondents' Ex. 9).

Thereafter, Ms. O'Shea, Ms. Hall, and Ms. Brumwell sought a Sheriff's sale of the 2/3 tenancy in common interests of Randy W. Gerben and Jason W. Gerben in the Property to which Mrs. Hirshauer filed a series of motions objecting. On October 29, 2013, the 2/3 tenancy in common interests of Randy W. Gerben and Jason W. Gerben were sold at the Sheriff's Sale. (Respondents' Ex. 11). On February 12, 2014, the Queen Anne's Court entered an order denying the various motions filed by Mrs. Hirshauer to stop the Sheriff's Sale. (Respondents' Ex. 10). On February 21, 2014, the Queen Anne's Court entered Order Ratifying Sheriff's Sale of [the Property], and Overruling Papers in Opposition Thereto. (Respondents' Ex. 11). The Order stated in pertinent part:

> This Court's Writs of August, 2006 (Hall and Brumwell) and December, 2006 (O'Shea) have been determined, on three Motions, with a full and fair opportunity for evidence and hearing, to be valid and enforceable. An appeal was filed by [Mrs. Hirshauer and the Gerbens] to the [Court of

> Appeals]. A mandate issued from that Court in May, 2013 affirming this Court's rulings. All grounds addressed in this Court, and in the Court of Appeals, or that could have been raised in any of the three prior attacks on the Writs have been determined and the validity of the Writs is not subject to further reconsideration and no factual or legal basis justifying reconsideration has been made … [Debtor] had filed a notice on April 27, 2013 indicating that he had filed a third chapter 13 in February, 2013, and pursuant to that document the Court entered a stay on May 20, 2013. That stay suspended any running of time against [Ms. Hall, Ms. Bruwell, and Ms. O'Shea]. That stay was vacated on July 10, 2013 as to the tenant-in-common interests of Randy W. Gerben and Jason W. Gerben. The tenant-in-common interest of James A. Gerben, Jr. has not been sold … The sale of the one–third tenant-in-common interest of Jason W. Gerben in [the Property] is hereby ratified. The sale of the one-third tenant-in-common interest of Randy W. Gerben in [the Property] is hereby ratified.

(Id.) After the sale was ratified, the 2/3 tenancy in common interests of Randy W. Gerben and Jason W. Gerben were conveyed by Sheriff's deed. (Respondents' Ex. 12). Mrs. Hirshauer then filed another motion to stay any further action which was denied by the Queen Anne's Court on March 20, 2014. (Respondents' Ex. 13).

## Conclusions of Law

Debtor argues that Ms. O'Shea, Ms. Hall, and Ms. Brumwell have no rights to the Property because the debt they are attempting to collect is a debt of Mrs. Hirshauer who is not an owner of the Property. Debtor argues that any levy placed upon the Property for Mrs. Hirshauer's debt did not create a lien and did not sever the joint tenancy held by the Gerbens because at the time the levies were placed upon the Property, Mrs. Hirshauer did not have an ownership interest therein. Debtor argues that the Respondents violated the automatic stay by seeking to sell and subsequently selling Randy W. Gerben's and Jason W. Gerben's interests in the Property.

The Court first turns to the issue of whether Ms. O'Shea, Ms. Hall, and Ms. Brumwell have in rem rights in the Property which were established prior to the filing of Mrs. Hirshauer's bankruptcy petition. By orders dated August 3, 2011 and December 26, 2011, the Queen Anne's Court found that: 1) the writs of levy entered in August, 2006 and December, 2006 established liens on the Property despite the fact that this Court found the Fraudulent Transfer Judgment was void; 2) the liens remained effective; and 3) Mrs. Hirshauer's bankruptcy proceeding had no res judicata effect with respect to the liens. The Court of Appeals affirmed the Queen Anne's Court's findings.

"The Rooker Feldman doctrine places limits on the subject matter jurisdiction of federal district courts and courts of appeal over certain matters related to previous state court litigation." Goodman v. Sipos, 259 F.3d 1327, 1332 (11th Cir. 2001) (citing Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476-82 (1983)). According to the Rooker-Feldman doctrine, "a United States District Court has no authority to review final judgments of a state court in judicial proceedings. Review of such judgments may be had only in [the United States Supreme Court]." Powell v. Powell, 80 F.3d 464, 466 (11th Cir. 1996) (quoting Feldman, 460 U.S. at 482). The doctrine applies when: "(1) the party in federal court is the same as the party in state court; (2) the prior state-court ruling was a final or conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state-court proceeding; and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment." Morris v. Wroble, 206 Fed. App'x 915, 918 (11th

Cir. 2006). "[A] federal claim is inextricably intertwined with [a] state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring).

The Court is baffled by the Maryland courts' holdings that the writs of levy established liens on the Property despite the fact that the Property was not owned by Mrs. Hirshauer at the time the writs were entered and despite the fact that the Court found that the Property was not fraudulently transferred.[1] However, the validity of the liens on the Property is an issue of state law which was argued by Mrs. Hirshauer and the Gerbens in the Queen Anne's Court and the Court of Appeals and was ultimately decided against them. The Rooker Feldman doctrine precludes the Court from reviewing or revisiting the Maryland courts' determination that the writs of levy established liens on and in rem rights in the Property prior to the filing of Mrs. Hirshauer's bankruptcy petition.

Debtor also argues that any levy placed upon the Property for Mrs. Hirshauer's debt did not create a lien and did not sever the joint tenancy held by the Gerbens because at the time the levies were placed upon the Property, Mrs. Hirshauer did not have an ownership interest therein.[2] Consequently, Debtor argues that the Respondents violated the automatic stay by seeking to sell and subsequently selling Randy W. Gerben's and Jason W. Gerben's interests in the Property. By the entry of its July 10, 2013 Order Modifying Stay Order of May 20, 2013 as to Randy W.

[1] While this Court found that the Fraudulent Transfer Judgment was void and was not valid and binding as to Mrs. Hirshauer and the Gerbens, it did not address the issue of whether the writs of levy established liens on the Property.

Gerben and Jason W. Gerben, the Queen Anne's Court rejected the Gerbens' argument that they owned the property as joint tenants, found that a tenancy in common arose when the writs of levy were executed in August, 2006, and found that "there was no stay applicable to co-debtors under Maryland law based on any automatic stay in [Debtor]'s case."

As with the issue of whether Ms. O'Shea, Ms. Hall, and Ms. Brumwell have in rem rights in the Property which were established prior to the filing of Mrs. Hirshauer's bankruptcy petition, the issue of whether the writs severed the joint tenancy resulting in a tenancy in common is an issue of state law which was argued by Mrs. Hirsahauer and the Gerbens in the Queen Anne's Court and decided against them. Additionally, state courts have concurrent jurisdiction with bankruptcy courts to determine the applicability of the automatic stay. In re Glass, 240 B.R. 782, 787 (Bankr. M.D. Fla. 1999)(noting that "[t]he court in which the litigation claimed to be stayed is pending has jurisdiction not only to determine its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay." (internal quotation omitted). To the extent the Gerbens disagreed with the Queen Anne's Court's rulings that: 1) the writs severed the joint tenancy in the Property and resulted in a tenancy in common; and 2) there was no stay applicable to Randy W. Gerben's and Jason W. Gerben's interests in the Property based upon an automatic stay in Debtor's case, they should have sought appellate review in the Maryland state court system. The Rooker Feldman doctrine precludes the Court from reviewing those determinations. Accordingly, the Court will deny the Motion for

[2] Debtor argues that the levies are at most, a lis pendens, which does not create a lien, but rather binds third parties to the outcome of the pending litigation.

Sanctions for Violation of the Automatic Stay. The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.

**DATED** this 20 day of June, 2014 in Jacksonville, Florida.

**JERRY A. FUNK**
United States Bankruptcy Judge